**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **STACY MARTINEZ,** | **Case No.** |
| **Plaintiff,** | |
| **v.** | |
| **DIVIDEND SOLAR FINANCE, LLC,** | **<u>CLASS ACTION COMPLAINT</u>** |
| **Defendant.** | |

COMES NOW Plaintiff Stacy Martinez, files this Class Action Complaint against Defendant Dividend Solar Finance, LLC (Dividend) on behalf of herself and all others similarly situated, as described below.

## <u>NATURE OF THE CASE</u>

1.      Dividend, a finance company specializing in consumer loans for residential solar panel systems (Systems), violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and state consumer protection laws by failing to disclose the existence of a hidden fee it retained as part of the financing of Systems.

2.      Systems are frequently marketed to consumers at their homes by door-to-door salespeople. These salespeople pitch the purchase, installation, and financing of Systems. The sales pitch has three economic components: lowering energy costs, reducing income taxes through government subsidy, and borrowing cheaply from friendly lenders.

3.      This sales model is highly profitable – but also illegal. This is because, while the quoted interest rates appear attractive, they conceal a large upfront fee charged by Dividend and secretly added to the stated price of the System. The hidden fee is never disclosed to the consumer.

4.      Thus, the amount financed, purportedly just for the purchase and installation of the

equipment, is over 30 percent more than the actual cash purchase and installation price. Dividend retains the difference between the loan amount and the amount paid to the installer for the Systems as an undisclosed fee. This scheme raises the effective cost of borrowing to predatory levels.

5.      The practical result of the scheme is that its victims are tricked into *financing* a hidden fee that is neither disclosed nor disbursed by Dividend. The victims are forced to pay monthly principal and interest to Dividend on the undisbursed amount.

6.      Victims rely on the statements and disclosures provided in deciding whether to purchase, install, and finance a System. Dividend's misrepresentations to consumers regarding the costs of borrowing induce them to borrow.

7.      Loan inflation schemes like this were commonplace prior to the passage of TILA and state consumer protection laws. Now, to protect consumers from this fraudulent behavior, these laws require that such fees be disclosed by the lender as a finance charge, and not bundled in the general amount financed category. This disclosure requirement allows consumers to make informed decisions about the actual cost of such credit.

8.      Several state attorneys general have sued solar panel financing companies, including Dividend, for their deceptive business practices and consumer fraud. In March 2024, the Minnesota Attorney General sued Dividend for deceptive lending practices related to this hidden fee.[1]

9.      Plaintiff brings this action for violations of the consumer financial laws set forth in TILA, 15 U.S.C. § 1601, *et seq.* Additionally, Dividend's conduct violates the North Carolina Retail Installment Sales Act, N.C. Gen. Stat. § 25A-1, *et seq.* (RISA) and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq.* (UDTPA). Plaintiff seeks

---

[1] *See* Compl. [Dkt. 1-1], *State of Minnesota v. GoodLeap LLC, et al.*, 0:24-cv-01181-KMM-TNL (D. Minn.).

rescission or reformation of her contract, refund of monies paid, actual damages, statutory penalties, attorney's fees, and other equitable and statutory relief for Dividend's violations of federal and consumer protection laws.

## PARTIES

10.    Plaintiff Stacy Martinez is an adult resident of Columbus County, North Carolina.

11.    Defendant Dividend is a Delaware limited liability company, with its principal place of business in San Francisco County, California. Dividend does business in Columbus County, North Carolina.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over Plaintiffs' TILA claims pursuant to 15 U.S.C. § 1641(e) and 28 U.S.C. § 1331.

13.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Dividend is a citizen of a state other than the state of which Plaintiff is a citizen. Plaintiff, on behalf of herself and the Class, seeks more than $5,000,000, and has a good faith basis to believe that more than $5,000,000 is at issue in this case.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise from the same event or transaction as Plaintiffs' TILA claims. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *Siler v. Louisville & Nashville R.R.*, 213 U.S. 175 (1909).

15.    This Court has personal jurisdiction over Dividend because Dividend resides within this District and purposefully directed its business activities toward this District.

16.    This Court also has specific jurisdiction over Dividend because Plaintiff's claims for relief arise from and relate to illegal acts committed by Dividend within this District.

## FACTUAL ALLEGATIONS

17.     Dividend violated state and federal consumer protection laws by failing to disclose the existence and retention of a significant fee. Instead of disclosing the actual amount of funds available for use by Plaintiff, Dividend discloses an inflated "Amount Financed" dollar figure that includes the "Hidden Fee." As such, homeowners are induced to finance the system by misrepresentations regarding the true cost of borrowing.

**A. Background.**

18.     In recent years, an increasing number of homeowners have chosen to purchase, install, and finance Systems, which are solar photovoltaic panels (solar PV) affixed to a roof or other on-premises structure to generate electricity and thereby reduce, eliminate, or invert household electric utility costs.

19.     Growth in the home solar industry has been driven by many factors, including increasing consumer demand for clean energy and falling prices for solar PV panels. But the growth of the solar industry is also financially incentivized by the United States government through the provision of the Residential Clean Energy Credit (RCEC).

20.     This tax credit currently allows homeowners to take a credit of up to 30% of the cost of their System from their federal income tax obligations on a dollar-for-dollar basis.[2] However, the RCEC may only be claimed for purchase and installation costs; it may not be claimed for borrowing costs, such as interest or loan origination fees. Further, under federal income tax regulations promulgated by the Internal Revenue Service, the credit amount received cannot exceed the amount owed in tax.

21.     Still, the mere existence of the RCEC has created significant profit opportunities for solar power system financing companies like Dividend. Specifically, the existence of the RCEC

---

[2] Residential Clean Energy Credit, IRS, https://www.irs.gov/credits-deductions/residential-clean-energy-credit (last visited November 4, 2024).

has allowed Dividend to close loans based, in part, on misrepresentations made to prospective borrowers by door-to-door salespeople regarding the extent to which such consumers would benefit from the RCEC.

22.     Often – and contrary to the actual IRS rules – the salespeople verbally represent to homeowners that they can claim a tax credit for the full amount of their purchase, known as the "contract price," and that the homeowners can claim the RCEC irrespective of tax liability.

23.     But that is untrue because the contract price includes undisclosed finance charges (the Hidden Fee discussed below), which are not RCEC-eligible. It is also untrue because it fails to disclose the impact of one's income tax obligations on RCEC eligibility.

## B. The Hidden Fee Scheme.

### 1. Dividend's Sales Model and Representation to Consumers.

24.     Dividend utilizes local installers to engage customers throughout the United States and sell Systems at an inflated price. [3]

25.     Dividend dictates the terms and methods partner installers (solar companies) must use to market and sell its loans. Under its agreement, Dividend agrees to provide solar companies with training on its loan programs, instruction materials, and ongoing support concerning marketing and other aspects of Dividend's loan programs. Solar companies agree to vigorously promote Dividend's loan product to consumers and are delegated responsibility to sell the Systems and promote and facilitate access to Dividend's loan products. Dividend provides onboarding sales

---

[3] The door-to-door salespeople who pitch Systems to consumers typically work for solar power system sellers and installers, which are sometimes one and the same. These companies have standing business relationships with Dividend pursuant to which they present Dividend's loan proposals and agreements to consumers. Therefore, even if they are not Dividend's employees, these door-to-door salespeople act as and are Dividend's agents and representatives.

[4] The relationship between Dividend and solar companies is extensively detailed in the recent lawsuit filed by the attorney general of State of Minnesota. *See* Compl. [Dkt. 1-1], ¶¶176-205, *State of Minnesota v. GoodLeap LLC, et al.*, 0:24-cv-01181-KMM-TNL (D. Minn.).

training and ongoing trainings to partner solar companies.

26.     Partner solar company representatives visit consumers' homes and promise significant energy bill savings if they purchase the Systems. As outlined above, during these in-home sales pitches, the salespeople mislead homeowners about the potential energy savings these systems offer and other potential savings, incentives, and discounts, such as tax credits or "energy buyback" programs.

27.     Once the consumer agrees to finance the System with Dividend based on the sales proposal, the sales representative will visit Dividend's portal and enter the consumer's name and information to apply for the loan. The salesperson enters the information, loan product, and loan amount. The transaction is typically done on the salesperson's tablet or laptop.

28.     Once the application is submitted and the credit check is approved, Dividend emails loan documents and disclosures to the borrower at the time of the sale. The loan documents include TILA disclosures, which purport to show, among other things, the finance charges, amount financed, itemization of the amount financed, and annual percentage interest rate (APR).

29.     Importantly, under the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 16 C.F.R. section 433.2, commonly known as the "Holder Rule", Dividend is liable to Plaintiffs for any loan-related misconduct attributable to the installer. The Loan Agreement contains the Holder Rule disclosure.[5] (Loan and Security Agreement, 1, attached as Exhibit A.)

*2. Dividend's Hidden Fee.*

---

[5] For further background on the Holder Rule, see U.S. Federal Trade Commission, Commission Statement on the Holder Rule and Attorneys' Fees and Costs, January 18, 2022, available at https://www.ftc.gov/system/files/documents/advisory_opinions/commission-statement-holder-rule-attorneys-fees-costs/p124802_commission_statement_on_the_holder_rule_and_attorneys_fees_and_costs.pdf (last visited September 26, 2024).

30.     Dividend closes loans by misrepresenting to prospective consumers the true costs of borrowing. Specifically, Dividend presents a loan proposal and agreement to homeowners that fail to disclose a hidden fee it charges as a condition of providing financing (Hidden Fee).

31.     The Hidden Fee is an upfront fee that Dividend imposes at origination and adds to the balance of the loan. The fee is not identified in marketing materials or sales proposals, and it is not included in the "finance charge" or calculated in the annual percentage rate disclosed as the cost of financing in the proposal or loan documents.

32.     The Hidden Fee is charged by Dividend on loans as a percentage, believed to be over 30%, of the actual cost of purchase and installation of the system.  The Hidden Fee is then added to the actual cost of purchase and installation. The Hidden Fee plus the cost of purchase and installation is disclosed generally as the Amount Financed. The Hidden Fee is not disbursed to the solar companies for purchase and installation. It is instead withheld from the disbursement and retained by Dividend as a financing cost.

33.     The Hidden Fee is made part of the loan balance that the consumer must repay over time, though a large portion (if not all) of the fee amount is paid by the consumer early if the consumer makes the tax-credit payment or pays the full balance of the loan – as often happens if the consumers sell their home.

### 3. The Hidden Fee is a Finance Charge.

34.     Finance Charge is defined in TILA as:

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 1026.4(a). *See* 15 U.S.C. § 1605(a) (defining "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed

directly or indirectly by the creditor as an incident to the extension of credit").

35.     Similarly, RISA defines Finance Charge as:

the sum of all charges payable directly or indirectly by the buyer and imposed by the seller as an incident to the extension of credit, including any of the following types of charges which are applicable…(1) Interest, time price differential, service, carrying or other similar charge however denominated;… (3) Loan fee, finder's fee or similar charge…

N.C. Gen. Stat. § 25A-8

36.     As described herein, the Hidden Fee is charged solely as a condition of receiving credit from Dividend. Customers who pay cash – instead of financing with Dividend – are not charged the Hidden Fee.

37.     Federal and state laws require that lenders include all costs imposed as an incident of credit to be included in the calculation of the "finance charge" and "annual percentage rate" be prominently disclosed to consumers. To avoid this disclosure requirement and deceive borrowers, Dividend devised contracts with solar companies that purport to classify the Hidden Fee as overhead cost incurred by the solar companies rather than the cost of credit.

38.     Depending on the circumstance, Dividend may also refer to the Hidden Fees in a variety of ways, such as dealer fees, seller points, rebates, or discounts from solar companies to Dividend or as fees charged for the privilege of offering the lender's loans.

39.     But however it is styled, the Hidden Fee is incurred and paid by the borrower, not the solar company.

40.     The Hidden Fee is paid by the borrower as a condition of financing.  Borrowers who pay cash do not pay the Hidden Fee.  As stated by the Attorney General of Minnesota, "Dividend's contractual provisions represent a fiction or contrivance devised to evade loan-disclosure laws." *See* Compl. [Dkt. 1-1], ¶ 203, *State of Minnesota v. GoodLeap LLC, et al.*, 0:24-cv-01181 (D. Minn.).

41.     The pricing structure of the Hidden Fee further illustrates this point. Specifically, the exact percentage charged for the Hidden Fee for a given loan depends on the loan's term and annual interest rate, as selected by the solar company that has made the sale. Dividend offers various loan products with different durations, rates, and corresponding fees. These loan options are presented to solar companies to choose from when marketing one of Dividend's loan products. Customers who purchase a System without Dividend's financing would not pay the Hidden Fee and would instead pay a lower cash price.

42.     Moreover, because the Hidden Fee is improperly included as an Amount Financed, instead of a Finance Charge, the disclosed annual percentage rate is also incorrect.  Borrowers detrimentally rely on these misrepresentations when deciding whether to purchase Systems.

### 3. The Hidden Fee is Not an Amount Financed.

43.     TILA requires creditors to disclose to the consumer the Amount Financed, which is defined as "the amount of credit of which the consumer has actual use." 29 U.S.C. § 1638(a)(2)(A). The consumer never has actual use of Dividend's Hidden Fee, and it is improperly included in the Amount Financed category of the TILA disclosures.

44.     Similarly, RISA defines Amount Financed as:

the total of the following to the extent that payment is deferred by the seller: (1) The cash price of the goods or services less the amount of any down payment whether made in cash or property traded in…

N.C. Gen. Stat. § 25A-9.

45.     The Hidden Fee is never disbursed to the solar companies for the purchase and installation of the System. The Hidden Fee should not be included as part of the Amount Financed because (1) the borrower never has "actual use" of the credit and (2) it is not part of the cash price of the goods and services.

46.     Dividend's loan documents contain intentionally false statements about its retention of the Hidden Fee. The Itemization of Amount Financed specifically states that the full Amount Financed – which includes Dividend's undisclosed Hidden Fee – will be paid to the Seller/Contractor for the collateral and installation.

**TRUTH IN LENDING ACT DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 2.99% | $35,516.12(e) | $82,455.00 | $117,971.12(e) |

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| 1.  **Principal Amount of Loan** | $ | 82,455.00 |
|    1.  Amounts Paid to Others on Your Behalf | | |
|      a.  To Seller/Contractor for Collateral and Installation | $ | 82,455.00 |
| 2.  **Amount Financed** | $ | 82,455.00 |

(Exh. A, 6.) This is a lie. The Hidden Fee is never disbursed to the solar companies. Instead, it is retained by Dividend.

47.     Dividend knows at the time of this disclosure its Hidden Fee will not be disbursed. The purpose of Dividend's Itemization of Amount Financed is to deceive consumers into believing that the full Amount Financed is for the purchase and installation of the System, and to hide the fee retained by Dividend.

48.     Dividend's partner solar company salespeople also communicate that the loan amount identified in the loan documents reflects the amount that is paid to the solar company to pay for parts and installation of the system.

**B. Plaintiff Falls Victim to the Hidden Fee Scheme.**

49.     On or about January 18, 2022, Plaintiff was solicited at her home to purchase and finance a System for her residence. The salesperson who solicited Plaintiff was Dividend's employee, contractor, agent, or representative.

50.     As a part of the sales pitch, the Dividend representative made, on behalf of Dividend, the following representations:

   a.    that purchasing and installing a solar power system would lower Plaintiff's energy costs;

   b.    that Plaintiff would be eligible to receive a 30% income tax credit against the full amount of their solar power system contract price;

   c.    that the contract price was the price to purchase and install a solar power system for Plaintiff's home;

   d.    that the contract price would be $82,455;

   e.    that the costs of credit were separate and distinct from the contract price; and

   f.    that Dividend could extend credit to Plaintiff at a low cost.

51.     In reliance on these and other representations, Plaintiff agreed in principle to obtain a loan from Dividend to purchase a System for her home.

52.     The contract price was much higher than a comparable cash transaction.

53.     To consummate Plaintiff's purchase, the Dividend representative presented several documents to Plaintiff on an electronic tablet. These documents were generated by Dividend and included a purported TILA Disclosure located on the Loan and Security Agreement.  The TILA Disclosure indicated an APR of 2.99%.

54.     The Dividend representative secured Plaintiff's electronic signature on these loan documents using the electronic tablet, including using software-based click-through processes. On information and belief, the software used for this purpose is proprietary to Dividend or specifically reviewed and authorized by Dividend.

55.     Dividend failed to disclose that a significant portion of the listed contract price was

not attributable to the purchase or installation of the System but instead is the above-described Hidden Fee.

56.     The exact amount of the Hidden Fee on Plaintiff's loan is unknown, but Dividend is in possession of this information. The Hidden Fee is believed to be at least 30% of the contract price charged. That is, at least $24,736.

57.     Thus, Dividend misrepresented to Plaintiff the basis of the contract price, misrepresented the true interest rate, misrepresented the APR, and misrepresented the amount Plaintiff could take as a tax credit.

58.     Dividend made these misrepresentations and omissions knowingly and intentionally and with the purpose of inducing Plaintiff to rely on same in evaluating, accepting, and paying the loan from Dividend to Plaintiff.

59.     Plaintiff relied on these misrepresentations and omissions. Plaintiff read the TILA disclosures, believed the Amount Financed was for the purchase and installation of the System, had the disclosures been accurate she would have sought a lower price, and she would have been able to obtain a lower price. If she could not have found a lower price, then she would have elected not to purchase the System.

60.     Plaintiff has made and continues to make timely payments under the terms of her loan agreement with Dividend.

## **CLASS ALLEGATIONS**

61.     Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23 ("Rule 23"). The proposed classes are defined as follows:

> All persons in North Carolina who received a loan from Dividend within the applicable statute of limitations to finance a residential solar energy power system

("Class").

Excluded from the Class are (i) Defendants and Defendants' subsidiaries and affiliates; (ii) Defendants' officers, directors, and employees; (iii) entities in which Defendants have a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

62.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and to add subclasses before this Court determines whether certification is appropriate.

63.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

64.    As to numerosity: The parties are sufficiently numerous such that joinder is impracticable. Upon information and belief, and subject to discovery, the Class consists of hundreds of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

65.    As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual Class members because Defendant has acted or failed to act on grounds generally applicable to the Class. Such common legal or factual questions include but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive, (iii) whether Defendant's conduct caused Class members harm; (iv) whether Defendant's conduct violated state consumer protection laws;

(v) the appropriate measure of damages; and (vi) whether Plaintiff and the Class are entitled to declaratory relief, injunctive relief, restitution, rescission, or a combination of these.

66.    As to typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and absent Class members are substantially the same because the challenged practices are uniform for Plaintiff and Class members. Plaintiff specifically alleges that Defendant's Disclosures and Loan and Security Agreements are uniform for Plaintiff and Class members in all material respects, including but not limited to their failure to disclose an accurate Amount Financed, Finance Charge, and APR and failure to disclose its Hidden Fees. Further, the relationship between the disclosed interest rate and Hidden Fee is determined according to class-wide formulae set by Dividend, as revealed by the company's own internal documents setting forth tables of interest rates and dealer fees in relation to one another. Accordingly, in pursuing her own self-interest in litigating the claims, Plaintiff will also serve the interests of the Class.

67.    As to adequacy: Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that Plaintiff received a loan from Defendant and has suffered damages because of Defendant's deceptive practices. Additionally, (i) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated; (ii) Plaintiff has retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiff and the unnamed members of the Class; (iv) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and (v) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

68.     As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

69.     As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to seek individual redress for Defendant's wrongful conduct.

70.     Additionally, the Class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

71.     By contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party or parties opposing the Class and would lead to repetitious trials of many common questions of law and fact.

72.     Plaintiff knows of no difficulty in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiff and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

73.    For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

74.    As stated above, Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

75.    All conditions precedent to bringing this action have been satisfied, waived, or both.

## COUNT ONE
### VIOLATION OF TRUTH IN LENDING ACT
#### *Failure to Provide Material Disclosures*
### 15 U.S.C. § 1638(a)
### (on behalf of Plaintiff)

76.    Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

77.    This Count is brought pursuant to 15 U.S.C. §1640(a) for Dividend's violation of the disclosure requirements of 15 U.S.C. § 1638(a).

78.    At all times relevant to this Complaint, Dividend has regularly extended consumer credit or offered consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments that is initially payable to Dividend on the face of the contract, making Dividend a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R § 1026.2(a)(17).

79.    TILA imposes strict liability. Plaintiffs need not prove that Dividend intentionally or negligently failed to comply with TILA but only that Dividend's practices did violate TILA.

80.    TILA exists to ensure "the informed use of credit." 15 U.S.C. § 1601(a). Per the statute:

The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter *to assure a meaningful disclosure of credit terms* so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and *to protect the consumer against inaccurate and unfair credit billing* and credit card practices.

*Id.* (emphases supplied).

81.     Regulation Z affirms the statute's purpose: "The purpose of this part is to promote the informed use of consumer credit by requiring disclosures about its terms and cost . . . ." 12 C.F.R. § 1026.1(a).

82.     Dividend's scheme to retain the Hidden Fee and not disclose its existence violates several of TILA's disclosure requirements, including the material disclosures requirement.  TILA defines "material disclosures" as including the amount to be financed, the amount of the finance charges, and annual percentage rate. 15 U.S.C. § 1602(v).

83.     As explained herein, Dividend disclosed inaccurate amounts for these material disclosures.  As such, the disclosures are ineffective and did not provide clear and accurate disclosures of credit terms.

84.     Dividend violated its duty to disclose the Amount Financed. 29 U.S.C. § 1638(a)(2)(A).

a.     For each consumer credit transaction, 29 U.S.C. § 1638(a)(2)(A) requires creditors to disclose to the consumer the Amount Financed, which is "the amount of credit of which the consumer has actual use."

b.     Dividend did not provide accurate and meaningful disclosures of the Amount Financed to Plaintiff.  Dividend knowingly and illegally failed to disclose the amount of credit of which the Plaintiff had actual use.

c.     Instead, as described herein, Dividend disclosed an inflated Amount

Financed that included the Hidden Fee that it retained as a condition of financing.

    d.    The true Amount Financed was easily calculable, and known, by Dividend.

85.    Dividend violated its duty to disclose the Finance Charges. 29 U.S.C. § 1638(a)(3).

    a.    For each consumer credit transaction, 29 U.S.C. § 1638(a)(3) requires creditors to disclose to the consumer the Finance Charges.

    b.    Dividend did not provide accurate and meaningful disclosures of the Finance Charges to Plaintiff.

    c.    Finance Charges are the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Regulation Z provides that a finance charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(b)(6).

    d.    The Hidden Fee charged and retained by Dividend should have been included in the Finance Charge since it was paid directly or indirectly by Plaintiff as an incident to the extension of credit.

    e.    Instead, as described herein, Dividend improperly and illegally included the Hidden Fee in the Amount Financed.

    f.    The true Finance Charge was easily calculable, and known, by Dividend.

86.    Dividend violated its duty to disclose the APR. 29 U.S.C. § 1638(a)(4).

a.    For each consumer credit transaction, 29 U.S.C. § 1638(a)(4) requires creditors to disclose the APR.

b.    Dividend did not provide accurate and meaningful disclosures of the APR to Plaintiff.

c.    TILA requires that the finance charge be "expressed as an 'annual percentage rate', using that term." 15 U.S.C. § 1638(a)(4). Regulation Z defines "annual percentage rate [a]s a measure of the cost of credit, expressed as a yearly rate." 12 C.F.R. § 226.14(a). Regulation Z provides that "[t]he annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." 12 C.F.R. § 1026.22(a)(1).

d.    The APR disclosed by Dividend is incorrect since it was based on a percentage of the inflated Amount Financed, which contains the improperly included Hidden Fee. The true APR is much higher than the disclosed amount.

e.    The true APR was easily calculable, and known, by Dividend.

87.    Dividend violated its duty to provide the Itemization of Amount Financed. 29 U.S.C. § 1638(a)(2)(B).

a.    For each consumer credit transaction, 29 U.S.C. § 1638(a)(2)(B) requires creditors to either provide the written "Itemization of Amount Financed" or to provide the option to receive the itemization. Dividend elected to provide the Itemization of Amount Financed at the time of the loan closing.

b.    Dividend did not provide an accurate and meaningful Itemization of Amount Financed to Plaintiff.

c.    Furthermore, Dividend's itemization also includes the misleading statement that the total Amount Financed would be disbursed to the solar company. Dividend knew at the time of the disclosure that it would receive the Hidden Fee and not disburse the full Amount Financed. The itemization was made intentionally and knowingly by Dividend to mislead Plaintiff as to the true cost of credit.

88.    Dividend's disclosures were not based on the best information reasonably available to it.

89.    Moreover, because of Dividend's failure to provide meaningful disclosures of credit terms, Plaintiff was not able to compare the various credit terms available to her and avoid the uninformed use of credit.

90.    Plaintiff was damaged by Dividend's conduct. This damage includes the financing and payment of an illegal, hidden fee.

91.    Pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to damages, including statutory and actual damages.

92.    Pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to payment of attorneys' fees and costs.

**COUNT TWO**
**VIOLATION OF THE NORTH CAROLINA UNFAIR**
**OR DECEPTIVE TRADE PRACTICES ACT**
**(N.C. Gen. Stat. § 75-1.1, *et seq.*)**
**(on behalf of Plaintiff and Class)**

93.    Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

94.    This Count is brought by Plaintiff individually and on behalf of the Class.

95.    Dividend's actions violated UDTPA Act, N.C. Gen. Stat. § 75-1.1, *et seq*. "The [UDTPA] was enacted to establish an effective private cause of action for aggrieved consumers in this State, and it was needed because common law remedies had proved often ineffective." *Bhatti v. Buckland*, 328 N.C. 240, 245 (1991).

96.    At all relevant times, Dividend was engaged in "commerce" as defined by Chapter 75 of the North Carolina General Statutes.

97.    The wrongful conduct of Dividend, as alleged above, took place in or affecting commerce in North Carolina, were unfair and deceptive, and directly and proximately resulted in damages to Plaintiff and Class.

98.    Dividend's conduct is unfair because it is contrary to public policy, unethical, oppressive, unscrupulous, and substantially injures its customers. Dividend's conduct is deceptive because it has the capacity or tendance to deceive.

99.    Specifically, as alleged above, Dividend knowingly and intentionally:

    a.    misrepresented the terms of its loans by failing to disclose the existence or amount of the Hidden Fee it secretly charges consumers;

    b.    directed these misrepresentations to consumers before purchase through marketing communications provided through home solicitations;

    c.    directed these misrepresentations to consumers after purchase through the loan-servicing documents it provides to consumers;

    d.    failed to disclose the true cost of borrowing to consumers; instead, it repeatedly

concealed and misrepresented this material information, including the existence

and amount of the Hidden Fee;

e.     misrepresenting the true Amount Financed, Finance Charge, and APR;

f.     misrepresented that borrowers could claim a tax credit for the full amount of their

purchase, and that the consumers can claim the RCEC irrespective of tax liability.

Dividend continues to violate the UDTPA and continues to injure the public by misleading

consumers about the terms of its solar power system financing services.

100.     Additionally, a knowing and willful violation of any provision of RISA constitutes

an unfair trade practice under UDTPA. N.C. Gen. Stat. § 25A-44. As detailed below in Count 3,

Dividend violated RISA by:

a.     failing to disclose the Hidden Fee in the Finance Charge;

b.     improperly including the Hidden Fee as an Amount Financed;

c.     charging and receiving fees, charges, or sums in excess of those specifically

authorized by RISA; and

d.     scheduling balloon payments in an amount more than ten percent (10%) larger

than the average of earlier scheduled payments.[6]

101.     Dividend's RISA violations were knowing and willful and constitute an unfair trade

practice under UDTPA.

102.     Dividend's conduct goes beyond a breach of contract. As described herein,

Dividend intentionally deceives its potential customers as to the true cost of financing.

103.     As a direct and proximate result of this unfair and deceptive conduct, Plaintiff and

the Class have been damaged and are entitled to a judgment against Dividend for all available

---

[6] For brevity, Plaintiff incorporates by reference the allegations contained in Count 3 related to Dividend's RISA violations.

damages, including actual damages, which are to be automatically trebled pursuant to N.C. Gen. Stat. § 75-16. Plaintiff and Class Members are also entitled to an award of attorney fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT THREE
### VIOLATION OF THE NORTH CAROLINA RETAIL INSTALLMENT SALES ACT
### (N.C. Gen. Stat. § 25A-1, et seq.)
### (on behalf of Plaintiff and Class)

104.    Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

105.    This Count is brought by Plaintiff individually and on behalf of the Class.

106.    Dividend's actions violated RISA, N.C. Gen. Stat. § 25A-1, *et seq*.

107.    Pursuant to RISA, a seller is one regularly engaged in the business of selling goods or services. RISA's definition of a seller also includes an assignee of the seller's right to payments. N.C. Gen. Stat. § 25A-6. As such, Dividend is a seller since it is an assignee of the seller's – here, the solar company who sold Plaintiff the System – right to payment.[7]

108.    Plaintiff and Class entered into the Loan and Security Agreement with Dividend to facilitate the sale and financing of the Systems.

109.    The sale and financing of the Systems are a consumer credit sale under RISA. Specifically, the transaction at issue in this lawsuit is the sale of goods in which:

    a.    Dividend is a seller;

    b.    Plaintiff and Class members are natural persons;

    c.    the Systems were purchased primarily for personal, family, or household

---

[7] Dividend would also be liable to Plaintiff and Class for the any loan-related misconduct attributable to the solar companies under the FTC's Holder Rule.

purposes;

d.    both the (1) debt representing the price of the goods is payable in installments and (2) a finance charge is imposed; and

e.    the Amount Financed does not exceed $75,000. As detailed above, Dividend misrepresents the true Amount Financed by improperly including the Hidden Fee. Plaintiff alleges the correct Amount Financed is approximately $57,719.[8]

110.    The Hidden Fee is not authorized by any section of RISA.

111.    Dividend violated RISA by:

a.    failing to disclose the Hidden Fee in the Finance Charge disclosure;

b.    improperly including the Hidden Fee as an Amount Financed; and

c.    charging and receiving fees, charges, or sums in excess of those specifically authorized by RISA.

N.C. Gen. Stat. § 25A-44(3)(ii) and (iii).

112.    Dividend also violated RISA by scheduling balloon payments.  RISA states that "no scheduled payment may be more than ten percent (10%) larger than the average of earlier scheduled payments…" N.C. Gen. Stat. § 25A-34.

113.    The Loan and Security Agreement schedules the 16th payment to increase by over 35% of the average of the earlier scheduled payments.

| Your Payment Schedule Will Be: | | |
| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| 15 | $294.39 (e) | Monthly, beginning 05/04/2022 (e) |
| 283 | $399.80 (e) | Monthly, beginning 08/04/2023 (e) |
| 1 | $411.87 (e) | 03/04/2047 (e) |

(Ex. A, 1.)

---

[8] 1. The actual Amount Financed is approximately $57,719 ($82,455 [listed Amount Financed] - $24,736 [Hidden Fee of 30%]).

114.    The filing of this Complaint specifically serves as notice to Dividend of its violations and as the demand to receive the rebate due of the excessive and unauthorized charges.

115.    As such, Plaintiff and Class are be entitled to demand and receive the rebate due related to these excessive or unauthorized charges. Furthermore, Plaintiff and Class are entitled to an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded should Dividend fails to refund these payments within 10 days.

116.    As a direct and proximate result Dividend's violations of RISA, Plaintiff and the Class have been damaged and are entitled to a judgment against Dividend for all available damages, including actual and statutory damages.

## TOLLING

117.    The running of any statute of limitations is tolled by reason of Dividend's fraudulent and knowing concealment. Through its affirmative misrepresentations and omissions, including the TILA disclosures, Dividend actively concealed from Plaintiff the Hidden Fee it wrongfully retained. As described herein, Dividend fraudulent concealment of material facts went beyond simple nondisclosure – it actively concealed the Hidden Fee Scheme and related conduct through misleading and fraudulent written and verbal statements.

118.    As a result of Dividend's actions, Plaintiff was unaware and could not reasonably know or have learned through reasonable diligence, that Dividend had violated TILA and North Carolina consumer protection laws. Plaintiff's lack of knowledge was the direct and proximate result of Dividend's acts and omissions.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment in her favor and against Dividend as follows:

A.      certification for this matter to proceed as a class action on behalf of the Class pursuant to Federal Rule of Civil Procedure 23;

B.      appointment of the Plaintiff as representative of the Class;

C.      appointment of counsel for Plaintiff as Lead Counsel for the Class;

D.      a finding that Dividend's practices are in violation of North Carolina consumer protection statutes;

E.      a finding that Dividend's practices are in violation of North Carolina common law;

F.      restitution of all amounts improperly paid to Dividend by Plaintiff and the members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

G.      disgorgement of profits in an amount to be determined at trial;

H.      actual damages in an amount according to proof;

I.      statutory damages as allowed by law;

J.      rescission;

K.      an award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

L.      an award of costs and attorneys' fees under all other applicable law; and

M.      declaratory and injunctive relief.

Plaintiff also requests such other relief as this Court deems just and proper.

Dated: December 31, 2024                    Respectfully submitted,


                                            s/ Eric Richardson
                                            Eric Richardson (NCSB 23515)
                                            ER Law
                                            106 N. Elm Street
                                            Suite 100
                                            Greensboro, NC 27401
                                            Phone: 336-904-9000
                                            Fax: 336-579-9531
                                            eric@erlaw-nc.com

                                            s/ Brad Ponder
                                            Brad Ponder (ASB-0965-P56P)
                                            Ponder Legal Group
                                            3221 M Street, NW
                                            Upper Floor
                                            Washington, DC 20007
                                            Phone: 888-201-0305
                                            Fax: 202-988-2135
                                            brad@ponderlegalgroup.com
                                            (*pro hac vice application forthcoming*)

                                            s/ Luke Montgomery
                                            Luke Montgomery (ASB-3810-A55M)
                                            Montgomery Law Firm, LLC
                                            2226 1st Avenue South, Unit 105
                                            Birmingham, AL 35233
                                            Phone: 205-201-0303
                                            Fax: 205-288-9431
                                            luke@montgomeryponder.com
                                            (*pro hac vice application forthcoming*)